# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
# Chief Judge Marcia S. Krieger

Civil Action No. 17-cv-01807-MSK-STV

**BRIANNA LEIGH BELL,**

 Plaintiff,

v.

**SORIN CRM USA, INC.,**

 Defendant.

___

## OPINION AND ORDER DENYING MOTION FOR SUMMARY JUDGMENT
___

**THIS MATTER** comes before the Court pursuant to the Defendant's ("Sorin") Motion for Summary Judgment **(# 69)**, Ms. Bell's response **(# 70)**, and Sorin's reply **(# 73)**.

## JURISDICTION

The Court exercises jurisdiction pursuant to 28 U.S.C.§ 1332.

## FACTS

The Court briefly summarizes the pertinent facts here, reciting undisputed facts and construing the disputed facts most favorably to the non-movant. As necessary in the analysis, further elaboration will be provided.

Ms. Bell is an independent sales representative who contracted with device manufacturers to sell medical devices products to doctors and hospitals. In 2014, Ms. Bell entered into a contract with Sorin by which she would market Sorin's cardiac devices to physicians. The agreement described Ms. Bell's "non-exclusive territory" that listed numerous doctors, hospitals, and medical practices in the Los Angeles area. Ms. Bell marketed the devices to doctors, who

would select among competing manufacturer's devices, to implant in their patients. However, the ability of a doctor to use a chosen device depended on whether the hospital, where that doctor would perform the surgery, also had a contractual arrangement with the device's manufacturer. If, for example, a doctor wished to use a Sorin device but the hospital involved did not have a contract with Sorin, Ms. Bell might have to sell the device at a reduced price or might be unable to sell it at all. Ms. Bell contends that she understood – an understanding that Sorin fostered – that Sorin had preexisting contractual relationships with all hospitals in her designated territory, and thus, that she would be able to market devices to doctors who had privileges at those hospitals. However, Sorin had no or only limited contracts with the hospitals in Ms. Bell's territory, thus Ms. Bell's ability to sell Sorin's devices was substantially limited.

Based on these facts, Ms. Bell asserts three claims (all of which are based on Delaware law): (i) fraud in the inducement, in that Sorin induced her to enter into the sales agreement based on fraudulent representations about its contracts with the hospitals in her territory; (ii) promissory estoppel, based on essentially the same facts; and (iii) breach of contract, in that Sorin breached the its promise, reflected by the contract, that she would have access to the hospitals listed as being in her territory.

Sorin moves **(# 69)** for summary judgment on all three of Ms. Bell's claims, arguing that: (i) as to the fraudulent inducement claim, Ms. Bell cannot show that she justifiably relied upon Sorin's representations that it had contracts with the hospitals in her territory, (ii) as to the promissory estoppel claim, she similarly cannot establish the element of justifiable reliance; and (iii) as to the breach of contract claim, she cannot show that Sorin breached any of the terms of its contract with her.

# ANALYSIS

## A. Standard of review

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary. *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Substantive law governs what facts are material and what issues must be determined. It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof and identifies the party with the burden of proof. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party. *See Anderson*, 477 U.S. at 248. When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence. *See* Fed. R. Civ. P. 56(c)(1)(A). Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute. *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999). If there is a genuine dispute as to a material fact, a trial is required. If there is no genuine dispute as to any material

fact, no trial is required. The court then applies the law to the undisputed facts and enters judgment.

If the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove. If the respondent comes forward with sufficient competent evidence to establish a *prima facie* claim or defense, a trial is required. If the respondent fails to produce sufficient competent evidence to establish its claim or defense, then the movant is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

**B. Fraudulent inducement**

Under Delaware law, a party who is fraudulently induced to enter into a contract may either seek to rescind the contract and restore the *status quo ante*, or may sue to recover expectancy damages. *E.I. DuPont de Nemours & Co. v. Florida Evergreen Foliage*, 744 A.2d 457, 465 (Del. 1999). To establish a claim for fraudulent inducement, the plaintiff must show: (i) the defendant made a false representation or omission of fact, (ii) the defendant knew of the falsity of that representation or the misleading effect of the omission; (iii) the defendant acted with the intent to induce the plaintiff's reliance upon the misleading representation or omission; (iv) the plaintiff reasonably relied upon the misleading representation or omission; and (v) the plaintiff suffered injury as a result. *Id., cited in AgroFresh, Inc. v. MirTech, Inc.*, 257 F.Supp.3d 643, 662 (D.Del. 2017).

Here, Sorin does not challenge that Ms. Bell can come forward with facts showing that it represented to her that it had "all necessary contracts with the hospitals" listed as part of her territory and that "there was no issue impeding . . . the physicians [Ms. Bell dealt with] from immediately purchasing and implanting Sorin devices at the hospitals listed" in her contract with

4

Sorin. Nor does it challenge whether Ms. Bell can adduce facts showing that these representations were false.[1] But Sorin contends that Ms. Bell could not rely upon its misrepresentations because she "was fully aware that Sorin did not have . . . contracts in place in the relevant territory, or, at a minimum, [she] could have easily discovered that the type of access she envisioned was not in place had she conducted a reasonable inquiry."

Sorin relies primarily on a May 3, 2014 e-mail exchange between Ms. Bell and Aamir Mahmood, Sorin's Western Area Director. This exchange took place after Ms. Bell had already signed a contract with Sorin, but before Sorin had countersigned it. In the exchange, Ms. Bell asked Mr. Mahmood about "applicable pricing" for the devices. In response, Mr. Mahmood stated "as for pricing, we aren't doing business in your accounts, so we don't have pricing. We can work together to determine what it will take and get it done. If you let me know where we need to be I can have our pricing and contract folks get to work on it."[2] Sorin thus argues that,

---

[1] For the first time in its reply brief, Sorin briefly argues that, based on Ms. Bell's response brief, Ms. Bell's claims are limited to a promise by Sorin of a "seamless and immediate transition." Sorin goes on to argue that such a promise is "mere puffery," that is, not a false or misleading assertion of fact. The Court does not consider arguments raised for the first time in reply briefs. *See generally Anderson v. Spirit Aerosystems Holdings, Inc.*, 827 F.3d 1229, 1236 n. 2 (10th Cir. 2016). This is particularly so insofar as Sorin's initial brief acknowledged the statements Ms. Bell alleged to be fraudulent, and thus, there was no reason for Ms. Bell's response brief to re-assert them.

[2] Sorin also refers to a statement in the e-mail that Mr. Mahmood was attaching "the Good Sam info," which Sorin describes as "a slide deck outlining the bidding process through which Sorin would attempt to secure a two-year contract to sell Sorin [ ] devices at Good Samaritan Hospital," one of the hospitals listed as being within Ms. Bell's territory. (In other words, Sorin argues that the "Good Sam info" further advised Ms. Bell that Sorin did not currently have a contract with one of the hospitals listed as part of her territory.) Sorin does not cite to any evidence in the record that explains how the "Good Sam info" attached to Mr. Mahmood's e-mail demonstrates the absence of an access agreement that would have precluded Ms. Bell's reliance upon any prior misrepresentations. All this evidence shows is that a contract was being negotiated, not that there was none in place. The Good Sam proposal could have been an addition or modification to an existing agreement. Thus, the Court does not consider that argument.

by informing Ms. Bell that it wasn't "doing business" in her accounts, that she should have understood that it did not have contracts with hospitals in her territory. Even if this statement was made, however, it was made after Ms. Bell signed the contract manifesting her reliance upon prior representations about having hospital access. Although the timing of this disclosure to Ms. Bell and her reactions thereto might ultimately be persuasive to the finder of fact on the issue of justifiable reliance, the Court cannot say that, as a matter of law, a defendant's disclaimer of a false representation <u>after</u> the plaintiff had already relied upon it entitles the defendant to summary judgment.

Sorin also cites to the affidavit of John McKenzie, a doctor who frequently purchased devices from Ms. Bell and who "assist[e]d Ms. Bell in screening potential employment opportunities" in 2014, including employment with Sorin. Dr. McKenzie states that he had personal conversations with Mr. Mahmood about the volume of devices that Dr. McKenzie and his colleagues would be purchasing and inquired whether Sorin would have "access to the appropriate hospitals." Mr. Mahmood insisted that Dr. McKenzie and his colleagues "could immediately start implanting Sorin products at each and every hospital where we had privileges," and that "everything was in place." Dr. McKenzie related Mr. Mahmood's statements to Ms. Bell, and although he informed her that "she needed to perform her own 'due diligence' to assure the necessary contractual access was in place," he believed that there were "no barriers to Ms. Bell and I immediately beginning to work at these hospitals once she agreed to become a Sorin sales representative." Sorin relies upon Dr. McKenzie advising Ms. Bell to "perform her own due diligence" as defeating any claim by Ms. Bell that her reliance on Sorin's misrepresentations was justified.

Under Delaware law, when a representation of fact is made as to a matter on which the

parties have different levels of access to information, the person receiving that information is entitled to rely on the truthfulness of the representation and is not required to seek out evidence of its falsity, even if there are means available to do so. *See S.C. Johnson & Son, Inc. v. Dowbrands, Inc.*, 111 Fed.Appx. 100, 108 (3d Cir. 2004), *citing Craft v. Bariglio,* 1984 WL 8207 (Del.Ch. Mar.1, 1984); *accord* Restatement (Second), Torts § 540 ("The recipient of a fraudulent misrepresentation of fact is justified in relying upon its truth, although he might have ascertained the falsity of the representation had he made an investigation").[3] There can be no real argument that Ms. Bell and Sorin had different levels of access to information about Sorin's alleged contracts with the hospitals: Sorin knew no such contracts existed, Ms. Bell could only

---

[3]     Sorin cites various authorities for the proposition that reliance is not justified when the falsity of the representation is "obvious" or where "a cursory examination of investigation" would have revealed it as such. *Citing, e.g. Davis v. 24 Hour Fitness Worldwide, Inc,.*, 75 F.Supp.3d 635, 640-41 (D.Del. 2014), *citing* Restatement (Second), Torts § 541 ("The recipient of a fraudulent misrepresentation is not justified in relying upon its truth if he knows that it is false or its falsity is obvious to him"). As explained in the comments to the Restatement, "the rule stated in this Section applies only when the recipient of the misrepresentation is capable of appreciating its falsity at the time by the use of his senses." Sorin's contention that Ms. Bell could have learned that Sorin did not have contracts with a given hospital simply by contacting the hospitals in question and asking about their contractual relationship with Sorin requires her to do far more than a "cursory examination" (much less one using only her senses).

*Davis* is not to the contrary. There, Davis, a board member of the defendant corporation, reached a deal with the board about his compensation. He later reduced that agreement to writing and, in doing so, "alter[ed] key provisions," including advancing the due date of a substantial cash payment to himself. Davis submitted the revised agreement to the defendants' counsel, who "recognized that [the revised agreement] specified a cash payment to be settled in 2012, rather than 2013" as agreed upon, but "nevertheless signed [it]." Ultimately, the defendant repudiated the agreement and Davis sued, prompting the defendant to assert counterclaims sounding in fraud. *See Davis v. 24 Hours Fitness Worldwide, Inc.*, 2014 WL 4955502 (D.Del. 2014) (prior case). Granting summary judgment to Davis on the fraud counterclaims, the court found that "even before" the defendant signed the agreement, "it had sufficient information to place it on notice of [Davis'] misconduct," and that, therefore, the defendant could not demonstrate justifiable reliance. The obviousness of the false representation in *Davis* – which the court found was already known to the defendant before it acted – is distinguishable from the situation here, where there is no allegation that Ms. Bell knew that Sorin had lied about its contracts with the hospitals in her territory before she signed the agreement.

7

know that fact by deciding she should investigate, by determining who at a particular hospital would know that information, by seeking out that person, and by inquiring. Because such a disparity in the availability of knowledge existed, Ms. Bell was entitled to assume the truth of Sorin's representations without being obligated to conduct her own investigation. Dr. McKenzie's suggestion that she do her own "due diligence" does not alter this analysis. First, the Court has some doubt that Sorin can rely on the fact that a third party (whom Sorin was also deceiving) might have advised Ms. Bell to proceed cautiously. But even assuming it can, the record does not reflect that Ms. Bell conducted her own investigation, rather than rely upon Sorin's representations. *Compare S.C. Johnson*, 111 Fed.Appx. at 108 (plaintiff "specifically agreed to rely only upon its own due diligence rather than relying upon any information it received from Defendants"), *citing Omar Oil & Gas Co. v. Mackenzie Oil Co.*, 138 A. 392, 397 (Del. 1926) (plaintiff "will not be prevented from availing himself of false representations of the seller, unless he makes an investigation on his own account and it is of such character as to fully acquaint him with the essential facts"). In the absence of an actual investigation, Ms. Bell may simply rely on Sorin's statements.

Sorin's reply brief adds an additional factual argument not previously presented with regard to this claim - that in April 2014, Ms. Bell acknowledged to Mr. Mahmood that she knew that Sorin currently had "zero percent market share" and that she would be "launching [the] brand in the Los Angeles market."

Putting aside the fact that Sorin did not properly raise this factual argument[4] in its opening brief, the Court also notes that its characterization of Ms. Bell's e-mail is slightly

---

[4] Sorin's opening brief references this e-mail only in discussion of Ms. Bell's breach of contract claim.

overstated. The e-mail in question, bearing the subject line "CONTRACT DRAFT REVISIONS" is a lengthy list of modifications Ms. Bell was proposing to a draft contract that Sorin had provided her. Among items on that list, lacking any other context, are the words "Sweat equity, zero percent market share, launching a brand:" followed by what appear to be more cryptic statements by Ms. Bell: "No legacy change outs. ** Contract penetrations. Loss of approx. ~42k a month (for non-MRI, silicone brady leads[ . . . .])" Neither side has tendered evidence explaining the meaning of the "zero percent market share" comment, and in the absence of such explanation, the Court declines to assume the statement means what Sorin contends. It is clear that the phrase was not intended by Ms. Bell to be incorporated as a term in the parties' contract. Whether it was an acknowledgement of fact known and understood by Ms. Bell, a repetition of a statement made to her by Mr. Mahmood, a conceptual way of describing what Sorin expected of her, or something else, the Court cannot say. There is a genuine dispute as to the meaning of this unexplained document.

Accordingly, the Court denies Sorin's motion for summary judgment on Ms. Bell's fraudulent inducement claim.

**C. Promissory estoppel**

The Court devotes little attention to the promissory estoppel claim. Both sides acknowledge that the analysis of the promissory estoppel claim duplicate the analysis of the fraudulent inducement claim, and both sides simply refer the Court back to the same arguments previously discussed. Accordingly, for the reasons stated above, the Court denies Sorin's motion for summary judgment as to Ms. Bell's promissory estoppel claim.

**D. Breach of contract**

Under Delaware law, a party asserting a claim for breach of contract must show: (i) the existence of a contractual obligation, (ii) a breach of that obligation by the defendants, and (iii) resultant damage to the plaintiff. *Greenstar, LLC v. Heller*, 934 F.Supp.2d 672, 686 (D.Del. 2013). Sorin argues that the language of its agreement with Ms. Bell, specifically concerning the listing of her territory, "unambiguous[ly] does not obligate [it] to secure or maintain contractual access to" the hospitals listed therein. Therefore, the issue before the Court is whether the parties' contract creates any contractual duty on the part of Sorin to provide access to the hospitals listed in Schedule 3.01. (Sorin does not argue, and the Court does not reach, the question of whether there is evidence that Sorin may have breached any such duty.)

The interpretation of a contract is a matter of law for the court to determine. *Rhone-Poulenc Basic Chemicals Co. v. American Motorists Ins. Co.*, 616 A.2d 1192, 1195 (Del. 1992). The Court's fundamental obligation is to ascertain the parties' intentions, which it attempts to do by looking to the four corners of the document and interpreting its terms consistently with the agreement's overall scheme or plan. *GMC Capital Investments, LLC v. Athenian Venture Partners I, L.P.*, 36 A.3d 776, 779-80 (Del. 2012). Here, the contract's clear purpose is set forth in its "Engagement" clause, which states that "[Sorin] engages [Ms. Bell] as an independent sales representative to solicit orders for [Sorin's] products within the non-exclusive territory (as defined in [Schedule] 3.01)." Schedule 3.01, defining Ms. Bell's territory, states that her "non-exclusive territory shall consist of the following non-exclusive Accounts in the Los Angeles metropolitan area," then lists numerous practices, individual doctors, and hospitals. Section 10.01 of the contract requires Ms. Bell to "use her best efforts to promote the acceptance and sale

10

of" Sorin's products and Section 5.01 of the contract makes clear that Ms. Bell's sole compensation will be commission-based, in the form of a percentage of her sales.

The Court previously determined **(# 45)** that the language in Schedule 3.01 was ambiguous as to what party had the burden of ensuring that Sorin had contractual access to hospitals. Although Sorin extensively argues that it did not have the obligation, the Court finds those arguments unpersuasive and incorporates its prior ruling here.

Because the contract is ambiguous, the Court turns to extrinsic evidence of the parties' intentions. The undisputed evidence is that the existence of a contract between Sorin and a given hospital is a fundamental requirement before Sorin and Ms. Bell could sell any devices to doctors that practice at that hospital. Thus, for Sorin's contract with Ms. Bell to fulfill its essential purpose – Ms. Bell soliciting orders for Sorin from the hospitals listed -- it was necessary for <u>someone</u> ensure that Sorin had contractual agreements with the hospitals. It is not necessary for the Court to determine whether the duty to ensure access to the hospitals in Ms. Bell's territory belonged <u>exclusively</u> to Sorin or whether Sorin and Ms. Bell <u>jointly</u> shared that responsibility. Sorin is entitled to summary judgment on Ms. Bell's breach of contract claim only if Ms. Bell had the sole responsibility for creating contractual relations with the hospitals in her territory.[5] So long as Sorin had some degree of contractual obligation, Ms. Bell's claim for breach of contract must proceed to trial.

---

[5] Sorin appears to contemplate another possibility: that "no term of the [parties] agreement could possibly obligate either Sorin or Bell to secure and maintain contractual access to the hospitals" – in other words, that neither party had any contractual obligation to secure access. As noted above, the Court rejects this argument because it would render the contract a nullity. Without access, there can be no sales, and the very purpose of the parties' contract was to facilitate the making of sales that would benefit both Sorin and Ms. Bell.

11

The record reflects that, at least in practice, both Ms. Bell and Sorin were involved to some degree in facilitating access – Sorin concedes as much in its motion, stating that the parties engaged in "joint efforts to gain access to the Adventist Health system." And, as the Court noted in its prior Opinion, Section 10.11 of Ms. Bell's contract with Sorin prevented her from entering into any contracts without Sorin's permission. This evidence permits the Court to conclude that, at a minimum, the contract between Sorin and Ms. Bell imposed <u>some</u> duties[6] on Sorin to ensure that it (and by extension, Ms. Bell) had access to the hospitals listed in Schedule 3.01.

Accordingly, the Court denies Sorin's motion for summary judgment directed at the breach of contract claim.

---

[6] Because Sorin has not argued that Ms. Bell cannot prove that it breached whatever contractual obligations it may have, this Court need not specifically delineate now what those obligations are. Sorin's brief appears to assume that, if it is found to have any such duties, those duties would require it to "guarantee continuous access to the hospitals," yet hospitals can and do grant, deny, or modify access freely. This, Sorin argues, leads to an "absurd result." The result is indeed absurd, but only because of its premise: that the contractual duty is for Sorin to "guarantee continuous access." The contract's obligations flow from its purpose – to have Ms. Bell sell as many Sorin devices as possible to the listed hospitals – and thus, the duties Sorin would have under the contract would likely be to make reasonable, diligent, good faith efforts to create and maintain access to those hospitals. If circumstances outside Sorin's control caused a hospital to suddenly withhold access, the Court would be hard pressed to conclude that Sorin was in breach of the contract.

12

## CONCLUSION

For the foregoing reasons, Sorin's Motion for Summary Judgment **(# 69)** is **DENIED**. The parties shall jointly file a proposed Final Pretrial Order as set forth in the Trial Preparation Order **(# 30)** within 30 days, following which a Pretrial Conference will be set.

Dated this 19th day of February, 2019.

**BY THE COURT:**

_____

Marcia S. Krieger
Chief United States District Judge